IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| David Garmon, ) | Civil Action No. 6:12-1208-MGL-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Administrative Remedy Coordinator; ) | |
| Southeast Regional Administrative ) | |
| Remedy Coordinator; Joseph Neal; ) | |
| H.T. Wall; Willie Davis; and ) | |
| National Inmate Appeal Coordinator, ) | |
| ) | |
| Defendants ) | |
| ) | |

This matter is before the court on the defendants' motion to dismiss, or in the alternative, for summary judgment (doc. 56). The plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971).[1] The defendants are Harrell Watts, the Bureau of Prison's ("BOP") National Inmate Appeals Administrator in Washington, D.C.; Craig Simmons, the BOP's Southeast Regional Office Administrator Remedy Coordinator in Atlanta, Georgia; and four BOP employees at the Federal Correctional Institution in Edgefield, South Carolina ("FCI Edgefield"): Joseph Neal, Unit Manager; Willie Davis, Correctional Counselor; H.T. Wall, Case Manager; and Jerome Brooks, Case Manager Coordinator.

---

[1] In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983 against a state official in his personal capacity for violation of a plaintiff's constitutional rights while the defendant was acting under color of state law. *Harlow v. Fitzgerald,* 457 U.S. 800, 814-20 (1982). Case law involving Section 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan,* 511 U.S. 825, 839 (1994).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(e) DSC, this magistrate judge is authorized to review pretrial matters involving *pro se* litigants and submit findings and recommendations to the District Court.

On July 16, 2012, the defendants filed a motion to dismiss or, in the alternative, for summary judgment (doc. 56). By order filed that same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. After receiving extensions of time in which to respond, the plaintiff filed his response in opposition on October 10, 2012 (doc. 71).

## **BACKGROUND**

The plaintiff is currently incarcerated at the federal penitentiary in Tucson, Arizona, serving a sentence of 60 years to life for convictions in the Superior Court of the District of Columbia for burglary, armed burglary, sodomy, rape while armed, and theft in the first degree (*see* doc. 56-1, BOP Sentence Monitoring Computation Data). Between February 2008 and December 2010, he was housed at FCI - Edgefield. While there, the plaintiff was charged with violating Code 108A, Possessing a Hazardous Tool - Aiding and Abetting, in relation to his alleged role in obtaining contraband from a prison trash compactor on May 11, 2010 (doc. 30, 2nd amended comp. p. 3). After an investigation, an incident report (doc. 1, comp., ex. 6) was prepared and served on the plaintiff on August 10, 2010 (doc. 30, 2nd amended comp. p. 3). In Box #4 on the report, the date of the incident is erroneously listed as August 10, 2010, rather than May 11th. However, in Box #11, a summary of the investigation correctly cites the alleged conduct as occurring on or about May 11, 2010 (doc. 1, comp., ex. 6). The plaintiff complains that the date error in Box #4 and its subsequent correction entitled him to a continuance of his disciplinary hearing and

that he was denied due process when the hearing took place on October 18, 2010 (doc. 1, comp. p. 5).

At the disciplinary hearing, the plaintiff had a staff representative, presented evidence, and made a statement in his own defense  (doc. 56-8, Wall decl. ¶ 8).  The Disciplinary Hearing Officer ("DHO") found the plaintiff to have committed the charged violation, and imposed sanctions of 60 days disciplinary segregation, loss of commissary and phone privileges, and loss of visitation privileges for one year  (*id.* ¶ 9).  The plaintiff thereafter filed a grievance. When his grievance was allegedly mishandled resulting in its rejection for untimeliness, the plaintiff brought this action.  In his original complaint, the plaintiff alleged the defendants violated his constitutional rights due to the inaccurate dates in the incident report, by failing to service him notice of the corrected dates in the incident report 24 hours prior to his appearance before the DHO, and by frustrating his efforts to exhaust administrative remedies to challenge his disciplinary hearing and sanctions.

The plaintiff filed this case in the United States District Court for the District of Columbia in May 2011, where it remained until April 2012, when venue was transferred to the District of South Carolina (*see* docs. 37 and 38, Order and Memorandum Opinion of the Hon. Colleen Kollar-Kotelly). While the case was pending in the District of Columbia, the plaintiff amended his complaint to add a claim against the defendants for failing to train BOP personnel in the protection and handling of prisoners' rights and legal matters  (*see* doc. 30, 2nd amended comp. pp. 12-13). The defendants contend that the plaintiff did not exhaust his administrative remedies on this "failure to train" claim and the court should dismiss the claim on that basis.

Following the filing of the plaintiff's complaint in this matter, he was given the opportunity by the BOP to file a "resubmission" challenging his disciplinary hearing (doc. 56-3, Watts decl. ¶ 10; doc. 56-4, Simmons decl.  ¶13).  The plaintiff did so, effectively resuming his administrative remedy procedures, and his administrative appeal was

ultimately denied on the merits (doc. 56-2, Cassaro decl. ¶ 9, attachs. A-E).  Accordingly, the defendants agree that the plaintiff has exhausted his administrative remedies in challenging the DHO's decision against him and that this court has jurisdiction to consider this claim.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759

F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Subject Matter Jurisdiction***

The plaintiff brings this action under *Bivens*. Initially, the court notes that *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Accordingly, the plaintiff's *Bivens* action cannot lie against the defendants in their official capacity. *See Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (*Bivens* action does not lie against either agencies or officials in their official capacity).  As such, the plaintiff's *Bivens* claims against the defendants in their official capacities should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

***Failure to Exhaust Administrative Remedies on Claim of Failure to Properly Train***

The defendants argue that the plaintiff's claim alleging failure to train BOP personnel in the protection and handling of prisoners' rights and legal matters, first cited in the complaint but formally raised as a cause of action in his second amended complaint, should be dismissed because the plaintiff has failed to exhaust his administrative remedies on this claim.  This court agrees.  The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Exhaustion is required for "all action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted).  "[T]he PLRA's exhaustion requirement

is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.  Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants.  *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.  No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211.  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id.* at 204.  It also has the "potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record.*" Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).  As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90.  This is especially true in a prison context. *Id*. at 90 n.1.  Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The Bureau of Prisons ("BOP") has a three-tiered formal administrative grievance process, although there is also an informal resolution process. *See* 28 C.F.R. §§ 542.10 *et seq*.  An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. *Id.* § 542.13.  If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden within 20 calendar days after the date upon which the basis for the request occurred. *Id.* § 542.14.  The matter will be investigated, and a written response provided to the inmate. *Id.*

If dissatisfied with the response, the inmate may appeal to the Regional Director within 20 days of the date of the Warden's response. *Id.* § 542.15(a).  If dissatisfied with the regional response, the inmate may appeal to the General Counsel within 30 days of the Regional Director's response. *Id.*  Appeal to the General Counsel is the final level of agency review. *Id.*

The defendants submitted the declaration of Tami Cassaro, a Supervisory Attorney for the United States Department of Justice, BOP, in support of the motion for summary judgment.  According to Ms. Cassaro's review of the BOP's Administrative Remedy Log, the plaintiff has not filed any administrative remedies alleging that the BOP failed to properly train their employees in the area of prisoner's constitutional rights such as the exhaustion of administrative remedies or providing procedural due process to inmates (doc. 56-2, Cassaro decl. ¶¶ 10-11).  While the plaintiff has properly exhausted his administrative remedies to challenge his disciplinary hearing and has alleged the shortcomings of the defendants in timely considering his grievance and advising him of its progress, he has not initiated administrative review of this separate "failure to properly train" claim.  As argued by the defendants, the plaintiff's failure to exhaust on this claim deprives the court of jurisdiction to consider it under the PLRA.  Accordingly, this claim should be dismissed.

***Due Process***

The plaintiff complains that he was denied due process because (1) the correction of the incident report amounted to a modification of "confusing and misleading dates" that should have resulted in a continuance of the resulting disciplinary hearing, and (2) the staff did not timely advise him that he was a suspect in the incident (doc. 30, 2nd amended comp. ¶¶ 8-13).  Prisoners are entitled to certain procedural protections in disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974).  The minimum required protections are:  "(1) advance written notice of the disciplinary charges;

(2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

The plaintiff was provided with all of the due process that is required in relation to this incident. As the prisoner himself confirms, he was provided with a copy of the incident report on August 10th, more than two months prior to the disciplinary hearing that was conducted on October 18th (doc. 30, 2nd amended comp. ¶ 7). The DHO noticed the discrepancy of the dates on the incident report and contacted the reporting staff member who confirmed the mistake (doc. 56-8, Wall decl. ¶ 6). The obvious scrivener's error on the report – the transposition of the incident date and the date staff completed the investigation – and its subsequent correction for the record, did not prejudice the plaintiff such that his disciplinary hearing should have been postponed. A review of the incident report that the plaintiff received on August 10th reveals that another section, Box #11 - Description of the Incident, sets forth a summary of the incident with the date of May 11th (doc. 1, comp., ex. 6). As such, the plaintiff had sufficient information to understand the charge against him and the date it occurred, regardless of the scrivener's error elsewhere. Moreover, his argument regarding the staff's delay in advising him that he was a suspect in the incident is likewise meritless. Though the incident occurred in May and he was served with the incident report in August, the delay was attributable to the length of the investigation, as set forth in Box #11 on the report. Again, any such delay did not prejudice the plaintiff, as he had ample time between August (when he was notified) and October (when his hearing took place) to understand the charge against him. Accordingly, he was given sufficient advance notice to satisfy *Wolff*'s due process requirement.

In addition, the plaintiff received due process through the manner in which his disciplinary hearing was conducted and the charge against him was considered. The

plaintiff had the opportunity to call witnesses, which he declined; to present documentary evidence, including affidavits from two inmates who indicated the plaintiff did not commit the prohibited act; and to make a statement in his defense.  He also had the assistance of a staff representative, who also made a statement in the plaintiff's defense (doc. 56-8, Wall decl. ¶¶ 8, 10; doc. 56-10, DHO Report).  Following the hearing, the DHO issued a detailed written statement of the reasons for disciplinary action (doc. 56-8, Wall decl. ¶¶ 9-10).  In his written statement of reasons, the DHO stated that he considered all the evidence presented, including the evidence and statements presented in the plaintiff's defense, and the basis for his findings and the imposition of sanctions (doc. 56-10, DHO report).  Based upon the foregoing, the plaintiff's allegations of due process violations concerning his disciplinary hearing are without merit and should be dismissed.

*Administrative Remedies*

The plaintiff filed this case in the district court after his attempts to challenge the denial of his DHO appeal were allegedly thwarted by the failures of one or more of the defendants in properly notifying him of its status and its resulting unfair rejection as untimely.  Regardless of whether those accusations are true, the plaintiff has now had the benefit of a full administrative review of his appeal: after the case was filed, the BOP allowed the plaintiff to resubmit his administrative appeal, which was then considered and denied on the merits (doc. 56-3, Watts decl. ¶ 10; doc. 56-4, Simmons decl. ¶ 13).  As such, his claim that the defendants prevented him from exhausting his administrative remedies should be dismissed as moot.

*First Amendment*

The First Amendment guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I.  Prisoners such as the plaintiff retain this right while in custody.  *Turner v. Safley*, 482 U.S. 78, 84 (1987).  As discussed above, the plaintiff filed this action after his attempts to exhaust his administrative remedies were allegedly

impeded by one or more of the defendants. However, after the filing of this lawsuit, the plaintiff was afforded another opportunity to have his disciplinary appeal considered on the merits, and he indeed resubmitted his appeal. Now that his appeal has been fully considered and denied, the plaintiff's First Amendment argument is moot.

### *Fourteenth Amendment*

While the plaintiff cites the Fourteenth Amendment as being applicable in his case, he is mistaken. The Fourteenth Amendment to the Constitution of the United States extended the protections of the Bill of Rights to the people against the federal government by applying them to the states as well. U.S. Const. amend. XIV, § 1. As the plaintiff acknowledges in his pleadings, all the defendants are federal officials and not state officials, and thus the Fourteenth Amendment has no bearing on this case.

### *Qualified Immunity*

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 56) be granted.

IT IS SO RECOMMENDED.

January 31, 2013　　　　　　　　　　　　　　s/ Kevin F. McDonald
Greenville, South Carolina　　　　　　　　　　United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).